# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUSQUEHANNA COMMERCIAL     :     No. 1:09-CV-2012
FINANCE, INC.     :
    :
       Plaintiff,     :
    :
       v.     :     (Judge Conner)
    :
VASCULAR RESOURCES, INC.,     :     (Magistrate Judge Carlson)
    :
       Defendant.     :

## REPORT AND RECOMMENDATION

## I.    Introduction

This case involves a dispute between Susquehanna Commercial Finance, Inc.,

(hereafter Susquehanna), a commercial lending institution, and Vascular Resources,

Inc., (hereafter VRI), a vendor of medical equipment. This dispute arises out of a

2008 lending transaction in which Susquehanna provided just under $3,000,000 to

VRI as part of a financing agreement with a local medical practice, Brookeside

Surgical Arts at York, LLC, (hereafter Brookeside), to lease medical equipment from

VRI.

Susquehanna's civil complaint, which has been removed to federal court, (Doc.

1, Ex. A), alleges that VRI has not yet delivered this equipment, has breached its

contract to supply equipment, and has unjustly enriched itself at the plaintiff's

expense. (*Id.*) VRI has replied by referring to matters which are compelling, if

accurate, but which may lie outside the record in this case at present. Specifically, VRI contends that there is no breach of the agreement, that Brookeside continues to make payments to Susquehanna as required under the financing and lease agreements, and that Brookeside is not yet prepared to accept and use the medical equipment at this time. (Docs. 6, 10, 15 and 17.)

Each party now presents the court with motions advancing their competing visions of this commercial dispute. For its part, Susquehanna seeks emergency relief in the form of a preliminary injunction which would require VRI to set aside and freeze almost $3,000,000, the amount of money which Susquehanna advanced on Brookeside's behalf under these agreements. Susquehanna demands that these funds be frozen so that the money will be available to repay the Plaintiff at the conclusion of this case. (Docs. 7 and 13.) Thus, Susquehanna seeks relief in its motion for preliminary injunction which assumes the Plaintiff's ultimate success on the merits in this case. To obtain this relief Susquehanna must show that its version of this dispute is likely correct, and that it will suffer irreparable harm if the defendant is not forced to freeze $3,000,000 at the outset of the case.

VRI, in turn, moves to dismiss the case in its entirety, asserting that Susquehanna has completely failed to state a plausible cause of action against VRI since, even if one construes the pleadings wholly in Susquehanna's favor, there is no

contractual breach and no unjust enrichment on VRI's part. (Docs. 6, and 10.) VRI takes this position even though it does not dispute that it had received $2,974,193.55 from Susquehanna in December of 2008 to purchase equipment for Brookeside, but eleven months later has not yet provided any of the promised equipment to Brookeside. (*Id.*) Thus, in their competing motions, each party asks the Court at the inception of this case to make judgments on the ultimate merits of this dispute.

Moreover, each party advances these claims in the context of a case which has a curious legal and factual posture, since neither party has elected to join the sole remaining participant in this commercial transaction–Brookeside–as a party in this litigation. Thus, Susquehanna argues that it has clearly shown a contractual breach by VRI, but is not joined in that claim by Brookeside, the entity which would be most directly and adversely affected by that alleged breach. In contrast, VRI contends that there is no breach, and that both it and Brookeside are in complete agreement and full compliance with their contractual duties. However, VRI does not join Brookeside–an entity in a unique position to confirm these factual assertions–as a party in this action to support its position.

In the current curious context of this case, it cannot be said that either party is correct in the wildly opposing views they advance regarding the ultimate merits of this litigation. Therefore, it is recommended that both motions be denied at this time.

## II.    Statement of Facts and of The Case

The pertinent facts at this stage of the litigation can be simply stated: In December, 2008, Brookeside, a York county medical practice, entered into an equipment sales agreement with VRI in order to acquire $2,974,193.55 worth of medical equipment for its practice. (Doc.1, Ex. A ¶ ¶3-5.)  Brookeside also entered into an equipment finance lease agreement with Susquehanna to finance this transaction.(Doc.1, Ex. A ¶ 4.)  VRI was not a party to the lease agreement, but was identified in the agreement by Brookeside  as the vendor of the equipment. (Doc.1, Ex. A ¶ 6.) Brookeside then agreed with VRI to use the proceeds of its finance lease with Susquehanna to buy this equipment. (Doc.1, Ex. A ¶ 7.)

Pursuant to these triangular negotiations, VRI tendered an invoice for $2,974,153.55 worth of goods to Susquehanna on or about December 23, 2008. (Doc.1, Ex. A ¶ 8.) It was also allegedly represented to Susquehanna that time was of the essence in this transaction in order for Brookeside to take advantage of 2008 year-end equipment prices. (Doc.1, Ex. A ¶ ¶ 9-12.)   Relying upon this invoice, Susquehanna wire transferred $2,974,153.55 to VRI on or about December 31, 2008. (Doc.1, Ex. A ¶ ¶8-10.)

To date, the equipment has not been delivered, and Susquehanna claims that it has not been given a full accounting for its wire-transferred funds from VRI.

(Doc.1, Ex. A ¶¶ 11-14.) VRI, in turn, contends that it has the funds in its possession, will deliver the goods when Brookeside is prepared to receive them, asserts that Brookeside is paying on the lease with Susquehanna, contends that Brookeside is current on all lease payments, and states that Brookeside is content to defer equipment delivery from VRI at this time. (Docs. 6, 10, 15 and 17.)

On October 5, 2009 Susquehanna filed a complaint and petition for special relief in the Court of Common Pleas of York County. In these pleadings Susquehanna named VRI as a defendant, and sought recovery of the $2,974,153.55, which it forwarded to VRI under this three-party arrangement. (Doc. 1, Ex. A.) Susquehanna has also sought preliminary injunctive relief in the form of an order directing VRI to freeze and set aside $2,974,153.55, the sum it claims it is owed, so those moneys will be available to pay the judgment that Susquehanna expects to receive in this lawsuit. (Docs. 7 and 13.)

VRI then removed this action to federal court, and moved to dismiss the case in its entirety, alleging that there is no breach of contract, and that Susquehanna has completely failed to state a cause of action upon which relief can be granted. (Docs. 1, 6, and 10.) The Court conferred with the parties on November 7, 2009. At the conference the Court inquired into the curious posture of the case, in which each party was identifying Brookeside as the sole remaining participant in these

transactions, yet neither party had joined Brookeside as an indispensable party in this litigation. The Court then set a briefing schedule in this case, and provided a schedule for the joinder of Brookeside, or any other parties, in this action. (Docs. 11 and 12.)

These deadlines have now passed. The parties have fully briefed their respective positions on the outstanding motion for preliminary injunction and motion to dismiss. Despite the Court's admonition that Brookeside seemed an important participant in these transactions whose actions may be pivotal to an informed understanding of the transactions, both parties elected to allow the party-joinder deadline to pass without seeking joinder of Brookeside in this case in any fashion.

The motions are therefore ripe for disposition. However, as set forth below, neither party has carried its burden of showing that it is entitled to relief at this early stage of the proceedings when many factual matters, including the role of Brookeside in these transactions, remain unexplained. Therefore it is recommended that both motions be denied.

### III.   DISCUSSION

### A.   Susquehanna's Motion for Preliminary Injunction

### 1.   Legal Standards for Preliminary Injunctive Relief

We turn first to Susquehanna's request for a preliminary injunction compelling VRI to freeze $2,974,153.55 in order to pay any future judgments in this case. With respect to motions for preliminary injunction, it is well-settled that granting such relief lies in the sound discretion of the Court, and the exercise of that discretion will only be disturbed in unusual and compelling circumstances. As the United States Court of Appeals for the Third Circuit has aptly observed: "review of a district court's grant of a preliminary injunction is narrow. 'Unless the trial court abused its discretion or committed error in applying the law, we must take the judgment of the trial court as presumptively correct.' " *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1143 (3d Cir. 1982)( *quoting Kershner v. Mazurkewicz,* 670 F.2d 440, 443 (3d Cir. 1982)).

This discretion is guided, however, by certain basic principles, principles which set specific requirements on parties moving for preliminary injunctive relief. Pleadings, like those filed by Susquehanna, which seek extraordinary or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the

United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994) (*quoting SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985)). *See also Highmark, Inc. v. UPMC Health Plan, Inc.,* 276 F.3d 160, 170-71 (3d Cir. 2001).

A preliminary injunction is not granted as a matter of right. *Kershner v. Mazurkewicz,* 670 F.2d 440, 443 (3d Cir. 1982). It is an extraordinary remedy. Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party. As a threshold matter, "it is a movant's burden to show that the "preliminary injunction must be the only way of protecting the plaintiff from harm." *Emile v. SCI-Pittsburgh,* No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006) (*quoting Campbell Soup Co. v. ConAgra, Inc.,* 977 F .2d 86, 91 (3d Cir.1992)). Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." *Plain Dealer Publishing Co. v. Cleveland Typographical Union #53,* 520 F.2d 1220, 1230 (6th Cir.1975), *cert. denied,* 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock,* 90 F.2d 924, 927 (3d Cir.1937).

*Emile,* 2006 WL 2773261 at *6 (denying preliminary injunction). Accordingly, in order for Susquehanna to sustain its burden of proof that it is entitled to a preliminary injunction under Fed.R.Civ.P. 65, it must demonstrate both a reasonable likelihood of success on the merits, and that it will be irreparably harmed if the requested relief is not granted. *Abu-Jamal v. Price,* 154 F.3d 128, 133 (3d Cir. 1998); *Kershner,* 670 F.2d at 443. If the movant fails to carry its burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Hohe v. Casey,* 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original) (*quoting Morton v. Beyer,* 822 F.2d 364 (3d Cir. 1987)).

In the context of a commercial contractual dispute, like the dispute before this Court, these two essential elements of a meritorious preliminary injunction motion have a special and particularized meaning. At the outset, in such a setting, the threshold question of whether the movant has shown a reasonable probability of success on the merits requires a substantial showing by the moving party of a present, actionable breach of contract. Where such an initial showing of an actionable breach of contract cannot be made, courts have refused to grant preliminary injunctive relief. *See, e.g., Coco Brother, Inc. v. Pierce*, 741 F.2d 675 (3d Cir. 1984); *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137 (3d Cir. 1982); *Industrial Electronics Corp. v. Cline*, 330 F.2d 480 (3d Cir. 1964).

The second essential element to a meritorious motion for preliminary injunction– whether the movant has shown a reasonable probability of success on the merits– also takes on a specific meaning in a commercial, contract dispute. Proof of this element is crucial to such a motion, and imposes special demands on this moving party, since:

> Although irreparable injury is only one of four "factors," a moving party's inability to establish irreparable injury is, alone, fatal to the motion. *Phillips Petroleum Co. v. United States Steel Corp.,* 616 F.Supp. 335, 337-38 (D.Del.1985). In addition, "irreparable injury" is pregnant with meaning. The harm must be "imminent," *Tree Tavern Products, Inc. v. Conagra, Inc.,* 640 F.Supp. 1263, 1272 (D.Del.1986); not otherwise compensable by money damages, *Frank's GMC Truck Center, Inc. v.*

*GMC,* 847 F.2d 100, 102-03 (3d Cir.1988); "actual," *Phillips,* 616 F.Supp. at 338; and "sufficiently peculiar," *Coca-Cola Bottling of Elizabethtown v. Coca-Cola Co.,* 668 F.Supp. 906, 910 (D.Del.1987). The moving party must make a "clear showing of immediate irreparable injury" or a "presently existing actual threat," but an injunction will not issue merely to assuage the fears of the movant. *Continental Group, Inc. v. Amoco Chem. Corp.,* 614 F.2d351,359(3d Cir.1980). More succinctly put, "the injury contemplated must be real, not fancied; actual, not prospective; and threatened, not imagined." *Cordis Corp. v. Medtronic Inc.,* 2 U.S.P.Q.2d 1845, 1847 (D.Minn.1986), *aff'd,* 835 F.2d 859 (Fed.Cir.1987).

*Johnson & Johnson Orthopaedics, Inc. v. Minnesota Min. & Mfg. Co.,* 715 F.Supp. 110, 112 (D. Del. 1989).

In a contract dispute, where damages are a readily available remedy, proving irreparable harm entails specific and compelling proof since it is well established that "a plaintiff in a breach of contract case cannot [routinely]convert monetary harm into irreparable harm . . .. *See Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3rd Cir.1989) ("[t]he availability of adequate monetary damages belies a claim of irreparable injury"), *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1145 (3rd Cir.1982) ("we have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law")." *Bennington Foods LLC v. St. Croix Renaissance, Group, LLP* 528 F.3d 176, 178 -179 (3d Cir.2008).Thus the availability of damages in a contract case typically defeats a request for preliminary injunctive relief. Rather, securing

preliminary injunctive relief in contract cases requires a special showing. As the

United States Court of Appeals for the Third Circuit has observed:

> Establishing a risk of irreparable harm is not enough. A plaintiff has the
> burden of proving a "clear showing of immediate irreparable injury."
> *Continental Group, Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 359
> (3d Cir.1980). The "requisite feared injury or harm must be irreparable-
> not merely serious or substantial," and it "must be of a peculiar nature,
> so that compensation in money cannot atone for it." *Glasco v. Hills,* 558
> F.2d 179, 181 (3d Cir.1977). "[W]e have never upheld an injunction
> where the claimed injury constituted a loss of money, a loss capable of
> recoupment in a proper action at law." *In re Arthur Treacher's
> Franchisee Litigation,* 689 F.2d 1137, 1145 (3d Cir.1982). When the
> claim is based on a breach of contract, irreparable injury may be found
> in two situations: (1) where the subject matter of the contract is of such
> a special nature or peculiar value that damages would be inadequate; or
> (2) where because of some special and practical features of the contract,
> it is impossible to ascertain the legal measure of loss so that money
> damages are impracticable. *A.L.K. Corp. v. Columbia Pictures & Indus.,
> Inc.,* 440 F.2d 761, 763 (3d Cir.1971) (citing 4 J. Pomeroy, *Treatise on
> Equity Jurisprudence* § 1401 (5th ed. 1941)).

*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d. Cir. 1987)

Applying these principles, courts have routinely rebuffed requests for

preliminary injunctions in contract disputes where there has been no specific showing

that damages are an inadequate remedy. *See, e.g., Instant Air Freight Cop. v. C.F. Air

Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989); *Dennie v. Abramson Enters., Inc.*, 124

F.Supp.2d 928 (D.V.I. 2000); *Avins v. Widener College*, 421 F.Supp. 858 (D.Del.

1976). Indeed, such requests have been denied without the necessity of an evidentiary

hearing. *Dennie v. Abramson Enters., Inc.*, 124 F.Supp.2d at 931. Courts have also declined to issue preliminary injunctions for the sole purpose of preserving and freezing assets, in order to have those assets available to satisfy some future, but currently speculative, judgment; *see, e.g., J&S Development Corp. v. Montrose Global Assets, Inc*. 279 F. App'x 131 (3d Cir. 2008); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990), and have denied requests for preliminary injunctive relief in the form of orders directing payment of money on a contract the terms of which are being actively disputed by the parties. *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137(3d Cir. 1982).

Finally, in addition to these threshold showings which the movant must make to obtain a preliminary injunction, when examining a motion for preliminary injunction the court must also consider the possible harm to other interested parties if the relief is granted. *Kershner,* 670 F.2d at 443. Further, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. *Emile*, 2006 WL 2773261, at *6 (*citing Dominion Video Satellite, Inc. v. Echostar Corp.,* 269 F.3d 1149, 1154 (10th Cir.2001)). If the balance of these respective harms weighs against emergency relief, the motion should be denied.

## 2. Susquehanna Is not Entitled to a Preliminary Injunction at this Time

In this case our review of the Plaintiff's motions for preliminary injunction leads us to conclude that Susquehanna has not made the demanding showing required by Rule 65 for this extraordinary form of relief. At the outset, we find that Susquehanna has not met its threshold obligation of showing a reasonable probability of success on the merits.

With respect to the issue of Susquehanna's ultimate likelihood of success on the merits of this case, we begin by observing that at this time, and in the absence of some clearer understanding of the roles and positions of all of the participants in these transactions, no fully informed judgments can be made regarding probability of success, or failure, on the merits of these claims. For its part, Susquehanna simply argues that it has clearly shown a contractual breach by VRI, but does not present proof that this view is shared by Brookeside, the entity which would be most directly and adversely affected by that breach. In contrast, VRI contends that there is no breach, and that both it and Brookeside are in complete agreement and full compliance with their contractual duties, but VRI is not in a position at this early juncture in the litigation to provide full proof supporting these assertions. In the absence of clearer, and more compelling, evidence on this crucial question, it simply cannot be said that

Susquehanna has carried its burden of proving a reasonable probability of success on the merits. Therefore its motion for preliminary injunction should be denied. *See, e.g., Coco Brother, Inc. v. Pierce*, 741 F.2d 675 (3d Cir. 1984); *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137(3d Cir. 1982); *Industrial Electronics Corp. v. Cline*, 330 F.2d 480 (3d Cir. 1964).

As for the second benchmark standard for a preliminary injunction, whether the movant will be irreparably injured by denial of the relief, Susquehanna has not shown in any persuasive fashion that it cannot be adequately compensated for this alleged breach by money damages. In this regard, Susquehanna makes no showing that this contract dispute fall within those narrow categories defined by case law where an preliminary injunction is appropriate. Thus, Susquehanna does not show either: (1) that this is a dispute where the subject matter of the contract is of such a special nature or peculiar value that damages would be inadequate; or (2) that because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable. *A.L.K. Corp. v. Columbia Pictures & Indus., Inc.,* 440 F.2d 761, 763 (3d Cir.1971) (citing 4 J. Pomeroy, *Treatise on Equity Jurisprudence* § 1401 (5th ed. 1941)); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d. Cir. 1987). Quite, the contrary, the contract described by Susquehanna involves the delivery of a completely fungible commodity, cash, to VRI, in an amount

which can be defined with mathematical certainty, $2,974,153.55. Since it has long been held that "[t]he availability of adequate monetary damages belies a claim of irreparable injury", *Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3rd Cir.1989), and courts have repeatedly stated that "we have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law," *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1145 (3rd Cir.1982), the plaintiff's current failure of proof on this element compels denial of this motion. *See, e.g., Instant Air Freight Cop. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223(3d. Cir. 1987); *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137(3rd Cir.1982); *Dennie v. Abramson Enters., Inc.*, 124 F.Supp.2d 928 (D.V.I. 2000); *Avins v. Widener College*, 421 F.Supp. 858 (D.Del. 1976).

Finally, we note that granting this preliminary injunction, which would effectively freeze $3,000,000 in the Defendant's working capital for the pendency of this litigation, could severely harm the defendant's interests. Given the substantial, and currently unresolved, legal and factual questions relating to the ultimate validity of Susquehanna's complaint, this factor also weighs heavily against granting the Plaintiff extraordinary relief at this time. *See, e.g., J&S Development Corp. v. Montrose Global*

*Assets, Inc.* 279 F. App'x 131 (3d Cir. 2008); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990).

While Susquehanna has filed pleadings actively advocating for this emergency relief at the outset in the litigation, (Doc. 13 and 31) Susquehanna's motion for preliminary injunction rests upon a fundamental legal misunderstanding, a legal misunderstanding which may have also colored the Plaintiff's factual presentation. In an effort to establish its right to a preliminary injunction freezing $3,000,000 pending the outcome of this litigation, Susquehanna has relied primarily upon Pennsylvania state appellate cases to support its argument that the Court is required to freeze these assets pending the outcome of this case. (Doc. 13 at pages 3-4, Doc. 21, page 16.) Thus, Susquehanna, the moving party seeking this extraordinary relief, has not explained how its request complies with the strictures of Rule 65 of the Federal Rules of Civil Procedure, as that rule has been construed over the years by the federal courts. Indeed Susquehanna's pleadings do not address, or analyze, the requirements of Rule 65 as it applies to this case in any considered fashion.

This is a significant omission on Susquehanna's part since it is well-settled in a diversity contract dispute that, while state law governs the interpretation of a contract, "federal standards nonetheless govern requests to federal courts for a preliminary injunction." *Laidlaw Inc. v. Student Transportation of America*, 20

F.Supp.2d. 727, 751 (D.N.J. 1998)(*citing Instant Air Freight Co. v. C.F. Air Freight, Inc*. 882 F.2d 797, 799 and n.4 (3d. Cir. 1977))(denying preliminary injunction).The failure to address Rule 65's exacting legal standards in this motion is significant because the rule calls upon Susquehanna to make a demanding dual showing of both likelihood of success on the merits, and irreparable injury, in order to obtain an injunction. Case law construing Rule 65 also calls upon Susquehanna to demonstrate why damages are an inadequate remedy at this time. Furthermore, this case law rebuts any claim that Susquehanna is entitled to a preliminary injunction freezing assets as a matter of course at the outset of this litigation. Instead, case law emphasizes the evidentiary showing which must be made by a movant seeking such relief. In this regard, the controlling guidance of the United States Court of Appeals for the Third Circuit is instructive:

> Of course, just because a district court enjoys the power to protect a potential future damages remedy with a preliminary injunction does not mean that such an injunction is appropriate in a run-of-the-mill damages action. The traditional requirements for obtaining equitable relief must be met. These include, in this context, a showing that plaintiffs are likely to become entitled to the encumbered funds upon final judgment and a showing that without the preliminary injunction, plaintiffs will probably be unable to recover those funds. . . . . As to success on the merits, "the possibility of an ultimate levy was too remote in practical terms to justify freezing the property from the outset of the litigation." *First National,* 379 U.S. at 398, 85 S.Ct. at 539 (Harlan, J., dissenting) (discussing *De Beers* ). As to irreparable injury, [] evidence consist[ing] only of one conclusory affidavit . . . accusing [a party] of secreting assets-in other

words, "a mere statement of belief that the defendant can easily make away with or transport his money or goods"[has been held insufficient to compel relief]. *De Beers,* 325 U.S. at 222, 65 S.Ct. at 1135.

*Hoxworth*, 903 F.2d at 197.

In this case, Susquehanna has not carried this exacting burden of proof at the outset of this litigation. While Susquehanna's arguments regarding the merits of its contract and unjust enrichment claims, (Doc. 21, pages 2-14) raise sufficient legal and factual issues to defeat VRI's motion to dismiss, many of these legal and factual considerations also present matters outside the pleadings. Thus, at best, we can only say that Susquehanna has shown, as to success on the merits, "the possibility of an ultimate levy [which is] too remote in practical terms to justify freezing the property from the outset of the litigation,"*Hoxworth*, 903 F.2d at 197, and prevents us from saying that Susquehanna can demonstrate a reasonable likelihood of success on the merits at this time.

Similarly, Susquehanna's showing of irreparable harm, (Doc. 21 pages 17-20) is also wanting at present. Indeed, at this time that showing consists of nothing more than Susquehanna's speculation that VRI may be engaging in a "Ponzi scheme", (*Id.* at page 18), coupled with otherwise unsupported factual recitals set forth in a proposed amended complaint that Susquehanna seeks leave to file in this case. (*Id.*) Such a

showing falls far short of the affidavits discounted as a basis for a preliminary injunction in *Hoxworth*, and does not meet the precise and exacting standards required by Rule 65.

Indeed, in its reply brief seeking this relief Susquehanna appears to implicitly acknowledge the need for further factual development before this motion is ripe, stating that "Susquehanna is in the process of obtaining additional information from VRI through discovery, and intends to present all of this information at the hearing on its Preliminary Injunction." (*Id*. at pages 18-19.) To the extent that Susquehanna acknowledges in this brief its need for further factual support for its motion, we concur. However, this view leads us to the conclusion that a preliminary injunction, and any hearing on a motion for a preliminary injunction, should await the actual development and presentation of facts which meet the standards defined by Rule 65.[1]

---

[1]In this regard, we note that Susquehanna has argued that the court cannot issue an injunction in a disputed factual setting without an evidentiary hearing. *Elliot v. Kiesewetter*, 98 F.3d 47, 53 (3d Cir. 1996). We agree, but would also observe that before a hearing is ordered it would be appropriate for Susquehanna to make a threshold showing that it is entitled to this relief. Where that initial showing is not made, the motion may be denied, without prejudice and without an evidentiary hearing. *See Dennie v. Abramson Enters., Inc.*, 124 F.Supp.2d at 931.

We also note that, in its current posture, this case is in many significant respects unlike *Westernbank Puerto Rico v. Kachkar*, No.07-1606, 2009 WL 2871160 (D.P.R. Sept. 1, 2009), the principal case relied upon by Susquehanna in its reply brief to support its entitlement to a preliminary injunction at this time. For example, in *Westernbank*–a case which shows an 07 filing number–it appears that

Because Susquehanna has not carried its burden of proving at the outset of this case either a reasonable probability of ultimate success on the merits, or immediate and irreparable harm, and because granting the injunction could adversely effect the Defendant's interests, this request for a preliminary injunction should be denied without prejudice to Susquehanna later presenting a motion which both: 1) expressly addresses Rule 65's standards governing this interim injunctive relief; and 2) makes a more carefully detailed and fully supported factual showing of entitlement to relief.

While we believe that these factors combine to make Susquehanna's motion for preliminary injunction inappropriate and premature at this time, we fully appreciate the uncertainties that motivate this motion. In December 2008 Susquehanna advanced $2,974,153.55 to VRI for what it understood to be a time-sensitive, year-end purchase of medical equipment. To date, Susquehanna claims that it has not received an accounting for these funds or notice that the equipment has been ordered or delivered.

---

the injunction request was made two years into the litigation, rather than outset of the case. Moreover, the *Westernbank* injunction application was fully supported factually by what appear to have been detailed affidavits, something which has not been done in this case. Furthermore, these affidavits described more than an alleged contractual beach, they also factually documented a fraud. Finally, in *Westernbank* the plaintiff was able to clearly establish an entitlement to money under contracts with the defendants, something which has not yet been proven at the outset of this case. When these crucial distinctions are taken into account, the Court believes that *Westernbank* supports the position that the current preliminary injunction request is premature.

Susquehanna is well-justified in seeking the answers to these questions regarding the disposition of funds which it advanced 11 months ago. Indeed, VRI could go a long way in resolving the merits of this dispute by simply providing complete answers to these questions and concerns.

We note that, at the outset of this case, Susquehanna served discovery requests upon VRI which were designed to elicit this information. With Susquehanna's consent, (Doc.19.1) the deadline for compliance with these discovery demands has been continued to on or about January 4, 2010. (Doc. 20.) We will also be entering a separate order directing the parties to complete a case management plan, and participate in a case management conference, by January 4, 2010.

Given the timing of this court-ordered discovery, the litigation schedule agreed to by the parties and proposed by the Court should enable all parties to make informed judgments regarding the necessity of further motions for injunctive relief by on or about January 4, 2010. Therefore, this motion could be renewed at that time, if appropriate.

**B.**     **VRI's  Motion to Dismiss**

**1.**     **Rule 12(b)(6)--Legal Standards Governing Motions to Dismiss**

For its part, VRI has pressed its vision of this dispute on this court through a motion to dismiss this case for failure to state a claim upon which relief can be granted. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (12007) continuing with our opinion in *Phillips [v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal,* –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Id*. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In keeping with the principles of *Twombly*, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Ashcroft v. Iqbal*, __U.S. __, 129 S.Ct. at 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following *Twombly* and *Iqbal* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a"plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler*, 578 F.3d at 210-11.

**2.       VRI's Motion to Dismiss Should Also be Denied At This Time**.

In this case, we find that VRI has raised substantial doubts regarding the ultimate viability of Susquehanna's complaint. However, in the absence of a complete factual picture reflecting all sides of these transactions involving the two parties and another entity, Brookeside, many of these doubts rest on matters outside the pleadings which cannot be addressed through a motion under Rule 12(b)(6). In short, the parties' tactical choices at this juncture of the litigation prevent us from reaching a judgment as a matter of law on the pleadings. Therefore, it is recommended that VRI's motion to dismiss be denied without prejudice to the submission of an appropriate motion for summary judgment once the factual record is fully developed.

Fairly construed, Susquehanna 's complaint alleges two different causes of action against VRI, causes of action which are pleaded in the alternative.

First, Susquehanna brings a claim of breach of contract. In this count Susquehanna alleges that its course of dealings with VRI and Brookeside created a contractual relationship between the parties. (Doc. 1, Ex. A, ¶¶1-18.) As part of that relationship, Susquehanna alleged that VRI represented that it needed prompt payment from Susquehanna of $2,974,153.55 in December 2008 to secure medical equipment for Brookeside at year-end prices. (Doc. 1, Ex. A, ¶¶9-11.) Susquehanna tendered this payment, and now, 11- months later, is alleging the VRI has reneged on its  alleged

contractual obligation to provide the equipment, and refuses to account for the funds advanced by Susquehanna. (Doc. 1, Ex. A, ¶¶1-18.)

In the alternative, Susquehanna alleges that, even if VRI's contractual relationship was solely with Brookeside, VRI has engaged in unjust enrichment by inducing Susquehanna to tender $2,974,153.55 in December 2008, based upon a representation that these moneys were needed for 2008 year-end purchases, and then failing to make the purchases during the subsequent 11 months. (Doc. 1, Ex. A, ¶¶1-24.) Under both alternate theories of liability, we understand that Susquehanna points to VRI's failure to provide either the equipment or an accounting of the money for the past year as proof of either a breach of contract or an unjust enrichment. (Doc. 1, Ex. A, ¶¶12-14.)

In its motion to dismiss, VRI vigorously attacks the sufficiency of these claims. Relying in part upon cases construing fully integrated contracts, VRI argues both that there is no enforceable contract between VRI and Susquehanna which has been breached, and contends that the allegations that it was unjustly enriched when it received and retained $3,000,000 without providing equipment under the agreement with Brookeside, fail to state a plausible cause of action. (Docs. 6, 10, and 16.) VRI also invites the Court to resolve this dispute by examining records and documents outside the pleadings, exhibits attached to the pleadings themselves. (Doc. 16.)

Susquehanna replies to these arguments by apparently conceding that any alleged contractual arrangement between it and VRI late in 2008 was ill-defined, and not embraced in a single integrated contract. (Doc. 14.) Indeed, Susquehanna resorts to provisions of the Uniform Commercial Code dealing with poorly defined contracts to attempt to defeat VRI's motion to dismiss this contract claim. (*Id.*) In addition, Susquehanna argues that it is entitled to maintain a cause of action for unjust enrichment even in the absence of a contract claim, pointing to case law which permits parties to plead breach of contract and common law unjust enrichment claims in the alternative. (*Id.*)

While there may ultimately be great force to some or all of these arguments, in the absence of further evidence regarding actions and positions of all three parties in these transactions we believe that there are factual issues which preclude judgment for VRI as a matter of law on either of these claims at this time. These unresolved factual questions go to issues that are fundamental to this dispute. They embrace the issue of whether the course of dealings between Susquehanna and VRI created an enforceable agreement between the parties, as well as whether VRI improperly induced Susquehanna to make an early $3,000,000 payment to it in a fashion which led to unjust enrichment of VRI for the past 11 months at Susquehanna's expense. Moreover, it seems plain to this Court that other questions outside the current

pleadings will likely define the outcome of this litigation. These factual questions include: 1) the issue of whether the delay in the timing of the delivery of this equipment is a matter that Brookeside and VRI have agreed to; 2) the question of whether Brookeside has remained current in all of its lease payments to Susquehanna under its contract; 3) the issue of whether the course of commercial dealings between VRI and Susquehanna rose to the level of an contractual relationship independent of VRI's agreement with Brookeside; and 4) the seminal question at the heart of this dispute, and at the heart of Susquehanna's complaint–whether, having received $2,974,153.55 from Susquehanna, VRI can account for those funds and fulfill its obligation to deliver the medical equipment ordered by Brookeside.

These factual issues ultimately define this dispute. All of these issues are central to the case; and none of these issues can be answered at present. Therefore, a resolution of the merits of this case must await further factual developments, and submission of information beyond the pleadings. Because further factual development is necessary here, this matter may not be resolved on a motion to dismiss, and it is recommended that this motion be denied, without prejudice to the submission of an appropriate summary judgment motion by either party in the future.

### III.   RECOMMENDATION

Accordingly, for the foregoing reasons, upon consideration of the Plaintiff's motion for preliminary injunction, (Doc. 7), **IT IS RECOMMENDED** that the motion be **DENIED**, without prejudice. It is further recommended that the Defendant's Motion to Dismiss (Doc. 6), also be **DENIED** without prejudice.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*S/MARTIN C. CARLSON*
Martin C. Carlson
United States Magistrate Judge

Dated: December 8, 2009