# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUSQUEHANNA COMMERCIAL :
FINANCE, INC.,                   :      Civil Action No. 1:09-CV-2012
                                 :
    Plaintiff                :      (Judge Conner)
                                 :
v.                               :      (Magistrate Judge Carlson)
                                 :
VASCULAR RESOURCES, INC.,        :
                                 :
    Defendant                :

## MEMORANDUM ORDER

### I.    INTRODUCTION

Plaintiff Susquehanna Commercial Finance, Inc. ("Susquehanna"), has filed two motions pursuant to Rule 37 of the Federal Rules of Civil Procedure, seeking entry of orders compelling Defendants Vascular Resources, Inc. ("VRI"), and Bruce Wallace, to provide further responses to written discovery propounded in this case. The first motion seeks to compel VRI to provide full and complete answers to interrogatories and responses to requests for production of documents that Susquehanna has served. The second motion seeks entry of an order compelling Mr. Wallace to produce and permit inspection and copying of documents. Defendants have filed briefs opposing the motions, to which Plaintiff has replied. The motions are now ripe for disposition. For the reasons set forth below, the motions will be denied, without prejudice , but the Defendants, who are

now represented by new counsel, are urged to continue promptly to pursue the path of candid disclosure which they have pledged to follow in this case.

## II. BACKGROUND

Susquehanna commenced this action by filing a complaint and a motion for special relief against VRI in the Court of Common Pleas of York County, Pennsylvania, on October 6, 2009. Susquehanna commenced these legal proceedings to recover nearly $3 million that Susquehanna, as a lessor, advanced to VRI – a party with which it had no written contract – in order for VRI to procure medical equipment that was to be used or otherwise installed in a new medical facility being constructed in York County, Pennsylvania. The party constructing the medical facility – and the intended lessee of the equipment to be purchased with the funds that Susquehanna advanced – Brookeside Surgical Arts, LLC ("Brookeside") is not a party to this action, and Susquehanna has never sought to add it or its members as Defendants.[1]

VRI subsequently removed the action to this Court on October 16, 2009. Following removal, Susquehanna filed a motion for a preliminary injunction, and

---

[1] During two informal discovery conferences that this litigation has inspired since its removal to federal court, the parties have represented that Brookeside is actually current on its lease payments under its contract with Susquehanna, although Susquehanna has asserted that Brookeside may be in non-monetary breach of the lease agreement or its covenants.

VRI moved to dismiss the action entirely. Both motions were denied on January 6, 2010.

Meanwhile, Susquehanna sought to take discovery from VRI, principally by seeking answers to the bank's questions regarding the whereabouts of the nearly $3 million that it paid to VRI, and details regarding any medical equipment that may have been purchased with the funds. Susquehanna was frustrated from the start with what it considered to be inadequate responses from VRI, and Susquehanna resorted to two discovery conferences with the Court in an effort to extract further or more accurate responses from VRI.[2]

In addition to the difficulty that Susquehanna claims to have had in obtaining satisfactory answers to its discovery, the discovery process in this case, and the litigation generally, has also proceeded fitfully due in part to the fact that VRI has had two of its lawyers or their law firms withdraw from representing the company since the action was removed to this Court. Likewise, Defendant Wallace was not even added as a Defendant until January 5, 2010, and did not file an answer until March 22, 2010 – nearly two weeks after Susquehanna filed the pending motion to compel Mr. Wallace to permit inspection and copying of

---

[2] Susquehanna has summarized its efforts to run down information from VRI regarding what it refers to as "the missing $3 million" in a letter to the Court dated February 18, 2010, in advance of a second informal discovery conference. (Doc. 48.)

documents.  Replacement counsel for VRI and Mr. Wallace entered their appearance on March 12, 2010 – the day that Susquehanna moved to compel VRI to provide further discovery answers, and the day after Susquehanna filed its motion directed at Mr. Wallace.

Defendants VRI and Wallace filed briefs in opposition to the pending motions to compel on March 30, 2010.  Susquehanna filed its reply to VRI's opposition brief on April 12, 2010, and to Mr. Wallace's opposition brief April 13, 2010.

## III. DISCUSSION

### A. Relevant Legal Standards

Rule 26(b)(1) of the Federal Rules of Civil Procedure supplies the scope and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

>All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). Issues relating to the scope of discovery permitted under the Rules are to be resolved, almost exclusively, at the discretion of the Court. <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. <u>Marroquin-Manrizuez v. I.N.S.</u>, 699 F.2d 129, 134 (3d Cir. 1983).

Rule 33 of the Federal Rules of Civil Procedure provides for discovery through written interrogatories. Rule 33(a)(2) specifically states that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b). Fed. R. Civ. P. 33(a)(2). The Rule further directs that, in the case of a corporate party, the interrogatories must be answered by "any officer or agent, who must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). Rule 34, in turn, provides similar and additional requirements with respect to requests for the production of documents in the "responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

Rule 37 authorizes a party to move to compel disclosure if the discovery propounding discovery believes that it has received incomplete or inadequate

answers to discover authorized under Rule 26. Fed. R. Civ. P. 37. With respect specifically to requests for production of documents and interrogatories, Rule 37 provides:

> (B) To Compel a Discovery Response. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
> ...
>
> (iii) a party fails to answer an interrogatory submitted under Rule 33; or
>
> (iv) a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34.

Fed. R. Civ. P. 37(a)(3)(B). Rule 37 further states that "[f]or purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Rule 37(a) further provides that if a court grants a motion to compel, it must require the party whose conduct necessitated the motion to pay the moving party's fees unless, *inter alia*, the movant filed the motion without attempting in good faith to obtain the discovery without resorting to court action, or where other circumstances make an award of expenses unjustified. Fed. R. Civ. P. 37(a)(5)(A).

### B. Motion to Compel VRI to Provide Answers to Discovery

In its motion for entry of an order compelling VRI to provide further answers to written discovery that it has propounded, Susquehanna represents that on November 3, 2009, the bank served VRI with interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure, a request for production of documents pursuant to Rule 34, and requests for admissions pursuant to Rule 36. (Doc. 50, ¶ 2.) VRI requested 30 days of additional time within which to respond to the interrogatories; Plaintiff agreed to this request, and VRI served responses on January 4, 2010. (Doc. 50, Ex. A.) Defendant Bruce Wallace verified VRI's discovery responses.

Susquehanna has found VRI's responses to this written discovery to have been lacking. Specifically, it appears that Susquehanna has taken issue with VRI's responses to Interrogatory Nos. 1, 2, 10, and 11, and to its response to a single request for documents.

Interrogatory No. 1 requested that VRI "identify each piece of equipment listed on the Invoice which you have purchased and for each such piece of equipment list the purchase price, the date of purchase, and its present location." VRI responded as follows:

1. ANSWER: A purchase order and the funds were given to Congero Development from VRI to deliver the entirety of the order as its agent minus VRI's anticipated fee per the contract terms and conditions. VRI utilized Congero because:

   b) Knowledge level of Congero;
   c) Awareness of the construction schedule for the project;
   d) Ability of Congero to perform design functions and interface with design engineers and architect;
   e) Monies were advanced in the form of a loan to Brookeside in the amount of $388,566.88 for interest reserve payments to Susquehanna and project needs;
   f) Items that would not fluctuate in accordance with the construction build were purchased. These include: Carr Fold down nurses stations, Qty 10, which cost $2,800; Carr Narcotics cabinets, Qty 3, which cost $1,155; Carr View box, Qty 6 for $2,130; Guardian eye wash, Qty 2, $770; ASP Plasma sterilizers, Qty 4, $166,000; Scale tronix scale kit, Qty 2, $1,000.

Due to the current project stoppage the View box and ASP have been transferred to another job site and credited to the account. The Getinge equipment has been sourced as Trumpf since Getinge does not have FDA clearances for their sales claims and has higher pricing and the Steris system 1 has been recalled by the FDA. All other items revolve around the scope of the build and how many operating rooms, which has been, due to the Susquehanna problem, revisited by the Client, Brookeside, and remains and open discussion item. When released to purchase by Brookeside, VRI will obtain best pricing from among those we have been negotiating, obtain approval from Brookeside and then place purchase orders in accordance with the Amendment to the Agreement. All remaining purchased equipment is stored at a storage facility in California.

(Doc. 50, Ex. A.)

Interrogatory No. 2 request VRI to "identify by name and address of the financial institution and account number for each and every account in which the proceeds from the Invoice are being held and provide the present dollar balance in each such account." (Id.) VRI responded:

> 2. ANSWER: To the extent that this Interrogatory seeks to identify a specific account where the funds are currently being escrowed, no such account exists or has ever existed. The Equipment Sales and Services Agreement (hereinafter "Supply Agreement") provides that Vascular Resources, Inc., (hereinafter, "VRI" or "Defendant") shall have "full use of any funds delivered from buyer or its financial affiliates[.]" Section 1.03 of the Supply Agreement. The funds were placed in VRI's operating account for use by VRI as provided in the Supply Agreement. A significant portion of the funds paid to VRI represent VRI's overhead and profit regarding the provision of equipment to Brookeside and has been at least partially already earned. VRI has not had was not required to keep an itemized accounting of the funds.

(Id.)

Interrogatory No. 10 stated, "[i]if any of the proceeds have been used, spent or applied in any manner, please identify how much proceeds were used, spent or applied." (Id.) In response, VRI referred Susquehanna to its answers to Interrogatory Nos. 1 and 2. (Id.)

Lastly, Interrogatory No. 11 requested that VRI "[p]rovide a detailed accounting of the $2,974,193.55 wired to Vascular Resources, Incorporated on or

about December 31, 2008." (Id.) Once again, VRI directed Susquehanna to the answers it provided to Interrogatory Nos. 1 and 2.

Susquehanna has identified a number of asserted deficiencies in VRI's responses, including:

- VRI's failure to provide an address or location of the warehouse where the purchased equipment is being stored, and does not provide any of the documents associated with the purchases. Susquehanna represents that without this basic information, it cannot confirm the accuracy of VRI's representations.

- VRI's failure to provide the names of financial institutions where the nearly $3 million in advanced funds are or have been held, nor any account information, transactional documents, or account balances.

- VRI's failure to provide calculations for the funds used to compensate VRI for its overhead and profit.

- VRI's failure to provide a "detailed statement of how the funds were expended," but instead simply refer to the transfer of funds to Congero, the use of a limited amount of money to make equipment purchases, and the transfer of some of the equipment to another project.

- VRI's improper reliance upon an agreement with Brookeside that granted VRI "full use of any funds delivered from buyer or its financial affiliates" as a basis for not disclosing the requested information regarding what has happened to the money that Susquehanna sent.
- VRI's failure to provide or identify any documents containing information relevant to the transfer of funds, the purchase of equipment, or the location of either the funds or the equipment.

(Doc. 56, at 8-9.)

With respect to its response to Interrogatory No. 1 regarding information on the equipment that has already been purchased, VRI maintains that it has already provided sufficient detailed information in response to this inquiry. VRI notes that the only deficiency in the response that Susquehanna has identified is VRI's failure to identify the name and address of the storage facility where the equipment is being stored. VRI notes its opinion that the location of the equipment is irrelevant to the dispute in this case, but has agreed to amend its response to provide this information. We agree that VRI must provide this information but find it unnecessary to order the disclosure in light of VRI's concession that it will provide this information. We find that by providing this information to

11

Susquehanna, VRI will have addressed the only specific issue that Susquehanna has raised regarding the equipment purchases, and that there is no other good reason why VRI should be compelled to provide further answers to Interrogatory No. 1.

VRI responds to Susquehanna's complaints about its response to Interrogatory No. 2 regarding its disposition of the nearly $3 million by underscoring its position that because Susquehanna is not party to any contract with VRI, and, because under its lease agreement with Brookeside, Susquehanna is entitled to nothing more than a string of payments, the precise whereabouts of the nearly $3 million advanced is simply irrelevant. VRI also refers the Court and Susquehanna to the discovery responses themselves, in which VRI represented that all but $54,000 of the proceeds have been transferred to a third party, Congero Development, LLC, and is, therefore, out of VRI's immediate control and its accounts. Without conceding that the documentation is relevant, VRI has further represented that it will provide an amended response to Plaintiff's interrogatories to provide bank statements and wire confirmations to demonstrate the transfers of money from VRI to Congero. In light of VRI's agreement to supplement its responses in this regard, something that we agree VRI must do, we conclude that there are not further substantial bases upon which to compel VRI to provide

additional answers with respect to Susquehanna's financial inquiries at this time. Instead, we believe that any further discovery litigation should await the receipt of these responses, along with further discovery promised by Wallace.

Susquehanna also appears to have found VRI's responses to Interrogatory Nos. 10 and 11 to have been sufficiently lacking to merit a motion to compel, but its arguments regarding VRI's responses focus chiefly on the fact that VRI referred Susquehanna to its answers to Interrogatory Nos. 1 and 2 in response to Interrogatory Nos. 10 and 11, respectively. Susquehanna essentially contends that because it found the responses to Interrogatory Nos. 1 and 2 to have been deficient, VRI's reliance upon these responses as answers to Interrogatory Nos. 10 and 11 was similarly deficient. For its part, VRI responds that it provided full and complete answers in its responses to Interrogatory Nos. 1 and 2, and that it is not clear what else VRI could state to satisfy Susquehanna's inquiry.

We have reviewed VRI's responses to Interrogatory Nos. 1 and 2. While we appreciate Susquehanna's persistent interest in discovering as much information as possible about what may have transpired since it transferred nearly $3 million to VRI in late 2008, and about any equipment that may have been purchased with the funds, we do not agree that VRI's responses are so deficient that they merit an order compelling further answer at this time. We also believe

13

that complete candor by the Defendants on this issue could entirely address the questions raised in this case.  We are not convinced, however, that Susquehanna's desire for more specificity in certain of VRI's responses could not be achieved by further attempts to coordinate with VRI's new counsel. Furthermore, although not to Susquehanna's satisfaction, we find that VRI *did* respond to the discovery, and it has agreed to supplement its initial answers with further necessary detail.  Given the pledged prospect of further disclosures by the Defendants, we do not perceive VRI's answers to be so impermissibly vague, unresponsive, or otherwise inadequate, as to justify judicial compulsion at this time.  Instead, we believe the parties should work together, and further litigation should await the results of this pledged cooperation by the Defendants.  Moreover, as the Court has suggested to counsel previously, Susquehanna is not powerless in its efforts to extract further discoverable information from VRI, Mr. Wallace, or even third parties who may have information relevant to Susquehanna's claims and concerns, including through the use of depositions.  We encourage Susquehanna to work with VRI's new counsel, who have been in this case for only a short while, and attempt to work out a mutually agreeable discovery schedule.  To the extent that these efforts are unsuccessful or may benefit from judicial guidance, the parties may return to

the Court, and we stand ready to help sort out any intractable difficulties the parties may – but hopefully will not – encounter during this process.

Thus, at this time, in light of VRI's concessions, and its promise to provide further information, the motion to compel VRI to provide further answers will be denied without prejudice, as will Susquehanna's request that the Court order VRI to pay Susquehanna's fees incurred in preparing and briefing this motion.[3]

### C. Motion to Compel Bruce Wallace to Permit Inspection and Copying of Documents

On December 30, 2009, VRI filed an amended complaint, adding Bruce Wallace as a second Defendant in this action. On January 28, 2010, Susquehanna served a subpoena duces tecum on Wallace through his former counsel in California, which Susquehanna hoped would help the bank prepare for an early deposition. (Doc. 52, Ex. A.) According to Susquehanna, Wallace construed the subpoena as a request for production under Rule 34, and on March 1, 2010, Wallace responded to the request through counsel. (Doc. 52, Ex. B.) Curiously, on March 5, 2010, Susquehanna received a second set of objections and responses to the requests, which Wallace apparently sent directly. (Doc. 52, Ex. C.)

---

[3] We note that our decision is partly informed by VRI's representation that it would be supplementing its initial discovery responses, and we trust that this supplemental discovery will both be complete and produced without unnecessary delay.

Susquehanna notes that neither of the responses is verified under 28 U.S.C. § 1746. Susquehanna further charges that the two sets of responses conflict with each other, include objections that the bank claims are not permissible under law, and fail to include any documents or provide a date by which the documents would be made available for inspection, examination, and copying. Noting that Wallace previously verified discovery responses on behalf of VRI as its agent, and that Wallace is the founder and CEO of Congero Development LLC, Susquehanna takes issue with Wallace's asserted refusal to provide documents relating to the receipt of funds from the bank, the subsequent transfer of the money to Congero, any use of the money, the current status of the funds, or the purchase of equipment.

In response, Wallace – now represented by new counsel, who became engaged in this action after Wallace responded to the discovery at issue and just before Susquehanna filed the pending motions to compel – have characterized Susquehanna's motion as "a wasteful attempt to fabricate a discovery dispute where none should exist." (Doc. 65, at 1.) Wallace's counsel notes that in light of its recent engagement, and the breadth of Susquehanna's discovery requests, Wallace has been in the process of gathering and reviewing upwards of six gigabytes of documents, or approximately 600,000 documents, and that non-

privileged, responsive documents would be produced beginning the week of April 5, 2010. Wallace also notes that he served his initial responses in good faith, despite a number of the requests being substantially overbroad and objectionable.[4] Counsel for Wallace also represents that Susquehanna rebuffed her efforts to meet and confer in an attempt to avoid the need for the bank to continue prosecuting the pending motion. In light of this background and Wallace's continued efforts to identify documents that are responsive to the discovery, Wallace urges the Court to deny the motion and counsel's request for fees.

Upon consideration of the motion and the response, and in consideration of the particular circumstances of this case, including counsel's recent engagement in this matter, and Wallace's representation regarding his efforts to respond even to overly broad discovery requests, we find that the motion to compel should be denied at this time without prejudice to further action once the Defendants have had an opportunity to abide by their commitment to review, and release, relevant information contained in the half million documents amassed in this case. Although the Court is familiar with Susquehanna's concerns in this case, and with

---

[4] For example, Request Nos. 4, 7, and 11 each request that Wallace produce "all bank statements," "all financial statements," and all contracts involving Congero Development LLC. Request No. 10 requests that Wallace produce "all documents" referring or relating to "all communications" that Wallace may have had with more than 20 individuals "relating to" the money that Susquehanna transferred to VRI.

the difficulties that Susquehanna has encountered in the earlier stages of this litigation in obtaining what it considers satisfactory answers to its questions regarding the money it extended in 2008, we conclude that a motion to compel, and impose costs, may be premature at this time. The Defendants, through their current counsel, are pledging to provide more timely and fulsome discovery. We urge them to fulfill this commitment, and we allow them this opportunity by denying the motion, without prejudice.

Two final observations are in order here: First, although we are without an evidentiary record, the representations of counsel in the moving papers and responsive briefs suggest to the undersigned that this motion could have been avoided entirely through one or more conferences between counsel for the parties. Unfortunately, it appears that such a conferring process was not attempted, perhaps because it was assumed that it would be fruitless. We encourage the parties to endeavor to resolve these problems through a conferring process in the future, and the Court will be available to address discovery concerns to the extent judicial intervention may be helpful or necessary.[5]

---

[5] As with VRI's representations about its forthcoming supplemental discovery responses, our decision regarding the motion directed at Bruce Wallace is informed by his representations that he will be producing non-privileged, responsive documents as they are identified. We look forward to his complete compliance with this commitment to the Court.

Second, it is evident that what animates this litigation is Susquehanna's concern about the disposition of the $3 million it loaned to Brookeside, which was sent to VRI. While this curious financial arrangement may not entitle Susquehanna to a strict accounting of these funds, the simple step of allaying its concerns through a candid recital of what has been done with those moneys, something that perhaps could be achieved through the deposition of Defendant Wallace, could largely resolve this dispute. New counsel for Defendants is urged to pursue such a course, and we are through this ruling providing counsel with an opportunity to do so, without prejudice to Susquehanna's right to seek relief in the future.

## IV. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED THAT Susquehanna's motions to compel VRI and Bruce Wallace to provide further answers or responses to discovery propounded in this case (Docs. 50, 52) are DENIED.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: April 30, 2010