**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSQUEHANNA COMMERCIAL** | : | **No. 1:09-CV-2012** |
| **FINANCE, INC.** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **VASCULAR RESOURCES, INC.,** | : | |
| **et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM ORDER

## I.   INTRODUCTION

In the above-captioned action, which has generated considerably more rhetorical heat than substantive fire since it was first commenced in October, 2009, Defendants have filed a motion seeking entry of an order compelling Plaintiff to provide more fulsome responses to document requests and interrogatories that they have propounded in this case.  (Doc. 90.)  Included among the relief sought in their motion to compel, Defendants ask the Court to:

- compel Plaintiff to produce additional documents in response to requests for production ("RFP") that Defendants insist must exist, in spite of Plaintiff's general representations that they do not;

- direct Plaintiff to provide further responses to interrogatories that have been propounded, including so-called contention interrogatories, that seek answers setting for the factual basis for Plaintiff's claims in this case; and

- order Plaintiff to make available electronically stored information ("ESI"), notwithstanding an agreement reached between Plaintiff's counsel and Defendants' previous counsel early in this litigation that responsive materials would be produced either in hard copy or on disc.

In spite of Plaintiff's insistence that this litigation is "relatively narrow," and in spite of counsel's representation that he "has reassured defense counsel on numerous occasions that [Plaintiff] has complied with its discovery obligations in good faith," (Doc. 96, at 4), it is abundantly clear that Defendants do not share Plaintiff's view regarding the scope of this action, and their counsel are plainly not reassured by counsel's representations.

To the contrary, Defendants have expressed frustration with the limited extent of the document production made to date, and with what they describe as Plaintiff's counsel's failure to fulfill promises to supplement production in response to acknowledged deficiencies or omissions. Defendants have highlighted for the Court the fact that they have produced substantially more documents dating from 2008 and 2009 than Plaintiff, and they submit that Plaintiff's failure to produce similar documents evidences either intentional disregard of the bank's discovery obligations, or manifests an inadequate effort to locate and identify responsive materials that should be corrected promptly. As a corrective measure, Defendants ask the Court to compel further responses, direct Plaintiff to provide a full and detailed explanation

regarding the specific efforts undertaken to comply with the discovery that has been propounded, and permit Defendants access to ESI in order to determine the full extent of responsive materials that may be available in native formats. Additionally, Defendants have taken issue with what they contend are Plaintiff's evasive responses to interrogatories that have been propounded, including contention interrogatories, and they ask that the Court direct Plaintiff to provide more complete responses without further delay.

We have carefully considered Defendants' motion, Plaintiff's response, and the competing materials submitted by the parties in support of their positions. Because we believe that important questions have arisen regarding the adequacy of Plaintiff's responses made to date with respect to document production, we will direct that Plaintiff undertake a further effort to locate and identify responsive documents and materials, and if further responsive materials are identified, they must be produced without further delay. If Plaintiff concludes by December 31, 2010, that it has no further responsive materials to produce, we will direct that Plaintiff and its counsel provide a detailed, sworn explanation regarding the specific efforts that the bank has undertaken to respond to Defendants' requests so that Defendants and the Court have an opportunity to determine the adequacy of Plaintiff's efforts.

We also agree with Defendants that Plaintiff must respond meaningfully to document requests and interrogatories regarding ESI, and that the parties must meet and confer about Defendants' ESI discovery requests so that an agreeable schedule can be reached regarding the production of such material. A serious dispute has clearly arisen between the parties as to the adequacy of the responses made to date, relating to ESI as well as other documents produced. We do not agree with Plaintiff's blanket assertion that an agreement reached with prior counsel in 2009 necessarily controls Defendants ability to discover ESI and other electronic data, particularly as some of the current Defendants were not even named in this case when such an agreement was reached, and particularly because Plaintiff has failed to persuade the Court that producing ESI and other data in native format will be unduly burdensome.

In contrast, we do not find at this time that Plaintiff should be compelled to provide additional responses to interrogatories that have been propounded, and the motion will be denied as to this request.

## II.    BACKGROUND

Susquehanna commenced this action by filing a complaint and a motion for special relief against VRI in the Court of Common Pleas of York County, Pennsylvania, on October 6, 2009. Susquehanna commenced these legal proceedings to recover nearly $3 million that Susquehanna, as a lessor, advanced to VRI – a party

with which it had no written contract – in order for VRI to procure medical equipment that was to be used or otherwise installed in a new medical facility being constructed in York County, Pennsylvania. The party constructing the medical facility – and the intended lessee of the equipment to be purchased with the funds that Susquehanna advanced – Brookeside Surgical Arts, LLC ("Brookeside") is not a party to this action, although Susquehanna has recently sought leave to add it and its members as Defendants. (Doc. 106.)[1]

VRI subsequently removed the action to this Court on October 16, 2009. Following removal, Susquehanna filed a motion for a preliminary injunction, and VRI moved to dismiss the action entirely. Both motions were denied on January 6, 2010.

Meanwhile, Susquehanna sought to take discovery from VRI, principally by seeking answers to the bank's questions regarding the whereabouts of the nearly $3 million that it paid to VRI, and details regarding any medical equipment that may have been purchased with the funds. Susquehanna was frustrated from the start with what it considered to be inadequate responses from VRI, and Susquehanna resorted to two discovery conferences with the Court in an effort to extract further or more accurate responses from VRI.

_____

[1] This motion was filed on November 24, 2010, and is not yet ripe for disposition.

In addition to the difficulty that Susquehanna claimed to have had in obtaining satisfactory answers to its initial discovery, the discovery process in this case, and the litigation generally, has proceeded fitfully from the outset due in part to the fact that VRI has had several of its lawyers or their law firms withdraw from representing the company since the action was removed to this Court. Likewise, Defendant Bruce Wallace was not even added as a Defendant until January 5, 2010, and did not file an answer until March 22, 2010 – nearly two weeks after Susquehanna filed a motion to compel Mr. Wallace to permit inspection and copying of documents. Replacement counsel for VRI and Mr. Wallace entered their appearances on March 12, 2010 – the day that Susquehanna moved to compel VRI to provide further discovery answers, and the day after Susquehanna filed its motion directed at Mr. Wallace. The Court denied Plaintiff's motion to compel on April 30, 2010. (Doc. 68.)

On the same day, following the entrance of new counsel for Defendants, Plaintiff sought leave to file a second amended complaint, in order to add as additional Defendants Congero Development, LLC, Congero Management, LLC, Gary Savlov, Joe Vasconcellos, and Kathryn Wallace.[2] (Doc. 69.) Defendants did

---

[2] Messrs. Savlov and Vasconcellos have moved to dismiss the complaint on the basis that the Court lacks personal jurisdiction over them. (Doc. 76.) Because Plaintiff required considerable discovery in order to respond to this motion, the bank's response to the motion has been extended until January 31, 2011, and the motion remains pending.

not oppose Plaintiff's request to further amend the complaint, (Doc. 73), and the Court granted the request on May 12, 2010. (Doc. 74.)

With the addition of new parties, new counsel, and new issues in the case, discovery proceeded, although not without further disputes almost immediately arising. Thus, on June 24, 2010, in response to information from Plaintiff that intractable disagreements had surfaced, the Court directed the parties to confer and provide the Court with a joint schedule for the production of documents. (Doc. 79.) Thereafter, the Court directed the parties to submit a joint report in early August, 2010, regarding the status of discovery in the case. (Doc. 84.) Unfortunately, in their joint report, the parties advised the Court that in the course of preparing the report, even further disagreements had become apparent regarding the scope of permissible discovery and related matters. (Doc. 85.) Thereafter, the Court authorized the parties to submit additional motions relating to their discovery disputes to the extent they found that the pending disputes required judicial resolution. (Doc. 86.) Following entry of this order, Defendants filed the pending motion to compel further production of documents and answers to interrogatories. (Doc. 90.) The motion has been fully briefed (Docs. 90-2, 96, 99) and is ripe for disposition. For the reasons explained below, the motion will be granted in part and denied in part.

## III.    DISCUSSION

### A.    Relevant Legal Standards

Rule 26(b)(1) of the Federal Rules of Civil Procedure supplies the scope and
limitations governing the use of discovery in a federal civil action:

> (1) Scope in General.  Unless otherwise limited by court
> order, the scope of discovery is as follows: Parties may
> obtain discovery regarding any nonprivileged matter that
> is relevant to any party's claim or defense – including the
> existence, description, nature, custody, condition, and
> location of any documents or other tangible things and the
> identity and location of persons who know of any
> discoverable matter.  For good cause, the court may order
> discovery of any matter relevant to the subject matter
> involved in the action.  Relevant information need not be
> admissible at trial if the discovery appears reasonably
> calculated to lead to the discovery of admissible evidence.
> All discovery is subject to the limitations imposed by Rule
> 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).  Issues relating to the scope of discovery permitted under the
Rules are to be resolved, almost exclusively, at the discretion of the Court.
Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  A court's
decisions regarding the conduct of discovery will be disturbed only upon a showing
of an abuse of discretion.  Marroquin-Manrizuez v. I.N.S., 699 F.2d 129, 134 (3d Cir.
1983).

Rule 33 of the Federal Rules of Civil Procedure provides for discovery through written interrogatories. Rule 33(a)(2) specifically states that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b). Fed. R. Civ. P. 33(a)(2). The Rule further directs that, in the case of a corporate party, the interrogatories must be answered by "any officer or agent, who must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). Rule 34, in turn, provides similar and additional requirements with respect to requests for the production of documents in the "responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

Rule 37 authorizes a party to move to compel disclosure if the discovery propounding discovery believes that it has received incomplete or inadequate answers to discover authorized under Rule 26. Fed. R. Civ. P. 37. With respect specifically to requests for production of documents and interrogatories, Rule 37 provides:

> (B) To Compel a Discovery Response. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
> ...
>
> (iii) a party fails to answer an interrogatory submitted under Rule 33; or

(iv) a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34.

Fed. R. Civ. P. 37(a)(3)(B). Rule 37 further states that "[f]or purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Rule 37(a) further provides that if a court grants a motion to compel, it must require the party whose conduct necessitated the motion to pay the moving party's fees unless, *inter alia*, the movant filed the motion without attempting in good faith to obtain the discovery without resorting to court action, or where other circumstances make an award of expenses unjustified. Fed. R. Civ. P. 37(a)(5)(A).

**B.    Production of Documents**

1.    <u>RFP Nos. 10, 19-24, 13-17, 28, 29, 33-36, 44, and 60</u>.

Defendants assert that Plaintiff's production in response to the above requests for production ("RFPs") – all of which are generally directed towards documents evidencing correspondence to and from, or between, Plaintiff and various of its key employees and third parties arising out of the York County construction project – has been inadequate.[3]

---

[3] Given the volume of RFPs at issue, and the fact that so many of them relate generally to the same subject matter, we find it unnecessary to recite in detail the scope of each request for purposes of resolving the pending motion.

10

The lingering dispute regarding the adequacy of Plaintiff's responses to Defendants' document requests is, at bottom, straightforward: Defendants insist that Plaintiff has failed to produce voluminous documents from 2008 and 2009, and possibly earlier, that Defendants have sought regarding communication between the bank and various employees, individuals, and third parties relating to the York County construction project. In response, Plaintiff retorts that Defendants rely on "hyperbolic rhetoric" and "insinuations of misconduct," and maintains that the bank "performed a comprehensive electronic search of its computers and servers as necessary to identify all responsive email and other documents." (Doc. 96, at 1.) Although Plaintiff offers little detail to explain the "comprehensive" process that it used to search for responsive documents, Plaintiff stands fast by its assertion that it has provided the documents that its search turned up, and it now "has nothing else to offer." (Id.) Defendants reply to this assertion with marked skepticism, noting that they have produced substantially more correspondence between Defendants and Plaintiff from 2008 alone than Plaintiff has, and this fact – which Plaintiff never disputes or even addresses – strongly suggests that Plaintiff's "comprehensive electronic search" was, ultimately, inadequate. (Doc. 99, at 3.)

Looking past the competing accusations and rhetoric to the substance of Defendants' contentions and Plaintiff's response, we share the Defendants' concern

regarding the scope of Plaintiff's production to date. In contrast to the more than 26,000 pages of documents that Defendants have identified and made available to Plaintiff, the bank has produced only 4,000 pages of documents, almost all of which appear to have been created after July 2009 – despite the fact that Defendants are clearly attempting to discover information from as far back as 2007. Alarmed by Plaintiff's modest production, Defendants speculate that Plaintiff has "withheld hundreds if not thousands of pages of emails and other relevant documents from this critical period [i.e., 2007-2008]", and Defendants suggest that it is suspicious that a bank of Plaintiff's size claims to have maintained so few emails, internal documents, meeting records, and third-party communications regarding a multi-million dollar construction project. (Doc. 90-2, at 4.)

Although we do not find any basis to conclude that Plaintiff or its counsel have deliberately withheld documents, we do agree that Defendants have raised substantial questions regarding the quality of the search that was undertaken for requested documents, simply by virtue of the fact that so little has been produced relative to the scope of Defendants' own production. In light of Defendants' showing and this finding, we will direct Plaintiff to undertake further steps in an effort to locate and identify additional responsive documents. If such a further undertaking fails to identify additional responsive material by December 31, 2010, we will direct Plaintiff

to explain to the Court in greater detail, and under oath, the process Plaintiff used to attempt to locate and identify documents that may be responsive to Defendants' requests.[4]

In addition to compelling Plaintiff to undertake a further effort to identify and produce documents and materials responsive to the above-referenced RFPs, we address certain additional RFPs that relate to other matters below.

2.   RFP 31

This RFP asks Plaintiff to produce records of telephone or in-person conversations between Plaintiff and Congero, VRI, or Wallace.  Plaintiff has represented that no such documents exist, and has supported this representation with a declaration from Kenneth A. Hobbs, the Chief Information Security Officer for

---

[4] Similarly, Defendants have noted that a number of the documents that Plaintiff did produce referred to attachments, but the attachments were omitted or not provided, and there were other documents that referred to omitted files, and other documents were apparently redacted without any explanation, even where the documents were not subject to any asserted privilege.  (Doc. 90-2, at 9.) Defendants represent that Plaintiff's counsel promised to follow up on the asserted discrepancies or omissions, but has not done so.  (Id.)  Plaintiff has not responded sufficiently to this contention, other than to offer the reassurance that it would attempt to locate and produce the missing documents.  (Doc. 96, at 4.)  It appears that these documents have still not been produced; it is not clear whether or not Plaintiff has located them, or what steps Plaintiff has taken in an effort to do so. As part of Plaintiff's efforts to locate additional responsive materials, it is expected that Plaintiff will endeavor to locate these omitted documents and, if located, to produce them without delay.

Susquehanna Bancshares, attesting to the fact that "Susquehanna Bank does not maintain any phone or other recordings or transcripts of recordings in hardcopy, electronic or audio format related to this transaction." (Doc. 96-2, Decl. of Kenneth A. Hobbs, at ¶ 8.) We do not find that Defendants have identified any reason to disbelieve Mr. Hobbs's representation, or the representation of counsel, that these requested materials are simply unavailable. Accordingly, we find no basis to compel Plaintiff to take further steps to attempt to locate and identify materials that might be responsive to this request.

### 3. RFP 39

This RFP seeks "all documentation evidencing the reason(s) why Susquehanna Bank has refused or otherwise failed to fully fund the construction loan it extended to Brookeside." Plaintiff has not produced any documents in response to this request, instead claiming that "[t]he only documents responsive to this request within Plaintiff's possession, custody, or control are privileged . . . ." (Doc. 96, at 7.) Defendants emphasize that this information is critical to their defenses to Plaintiff's claims in this case, and dispute Plaintiff's claim that all potentially responsive documents would be subject to privilege. Instead, Defendants suggest that there must exist some internal documents responsive to this request – and the internal business

decision not to fund the construction loan – that would not be protected by the attorney-client privilege.

Upon consideration, it is not possible for the Court to resolve this particular aspect of Defendants' motion on the current record. We do find it somewhat unusual that every document within Plaintiff's custody that is responsive to this request is cloaked with the protection of attorney-client privilege or attorney work product. Nevertheless, we find no basis upon which to demand that Plaintiff produce documents that either do not exist, or which are subject to an applicable privilege or work-product exception. We underscore that Plaintiffs are plainly under an obligation to produce any non-privileged, responsive material in its possession, and the Court expects such production to be made. To the extent that during its renewed effort to identify responsive documents within its possession Plaintiff identifies additional responsive documents that are not subject to privilege, such documents must be produced without delay. If following this renewed inquiry Plaintiff continues to maintain that there are no non-privileged responsive materials in its custody, Plaintiff will be required to explain to the Court and Defendants the effort that was undertaken in an effort to identify responsive documents.[5]

_____

[5] We do not interpret Defendants' motion as asking that the Court evaluate Plaintiff's assertions of privilege; rather, we understand Defendants to be claiming that there must exist non-privileged, responsive documents regarding the bank's

4.    RFP 45, 46, and 47

These RFPs request documents that support Plaintiff's allegations that it requested information from Defendants concerning the status or an accounting of the subject equipment for which financing was extended.  It appears that Plaintiff has produced documents dating after late 2009, but nothing from before that time. Defendants have submitted that to the extent there exists any additional materials for any time prior to the lawsuit, Plaintiff should be compelled to produce it.      To the extent that during the course of its renewed search for responsive documents, Plaintiff discovers additional documents relating to these RFPs, they must be produced promptly.  As with the other RFPs discussed above, Plaintiff will be directed to redouble its efforts to locate and identify documents responsive to this request.  If Plaintiff is unable to identify any further responsive materials by December 31, 2010, Plaintiff and its counsel shall submit an explanation to the Court outlining the efforts that were undertaken to respond to this RFP.

4.    RFP 48

This RFP seeks documents that support Plaintiff's contention that Brookeside was unable to satisfy Plaintiff's credit approval requirements for the subject

_____

decision not to fund the York County construction project.  Neither party has submitted a privilege log for the Court's review.

equipment financing relating to the York County construction project. Plaintiff has refused to produce any documents in response to this request, asserting that any responsive documents within its custody are shielded from discovery on the grounds of attorney-client privilege or because they represent attorney work product. However, in its brief in response to Defendants' motion, Plaintiff attempts to clarify its response to this RFP, noting that although it objected on the grounds of attorney-client privilege and work product and "did not affirmatively state that it would produce non-privileged responsive documents," the bank claims that it has "produced all non-privileged documents in response to this request." (Doc. 96, at 5 n.2.) Because Defendants' motion seeking to compel further response to this particular RFP is grounded exclusively on their contention that Plaintiff could not withhold production on the basis of privilege, we do not find a sufficient basis to compel Plaintiff to undertake further effort to respond to this RFP, given Plaintiff's representation that it has produced all non-privileged responsive documents within its control.[6]

---

[6] As with RFP 45, 46, and 47, we do not interpret Defendants' motion as asking that the Court evaluate Plaintiff's assertions of privilege; rather, we understand Defendants to be claiming that there must exist non-privileged, responsive documents regarding the bank's decision not to fund the York County construction project. Neither party has submitted a privilege log for the Court's review.

4.    <u>RFP 53</u>

This RFP seeks all documents evidencing whether Plaintiff has reported the approximately $3 million advanced to Defendants "as a loss for tax reporting purposes." Plaintiff has objected to producing this material on the grounds that it is irrelevant, but Defendants dispute this, responding instead that the tax information may be relevant to help defend against Plaintiff's claimed damages, and regarding Plaintiff's duty to mitigate. Upon consideration, we agree with Defendants that this tax information may have potential relevance to their defenses in this litigation, and we do not find that Plaintiff has demonstrated a sufficient basis to resist this discovery. Plaintiff will, therefore, be directed to supplement its response to RFP 53 and produce responsive material in its possession.

C.    **Interrogatories**

In addition to their continued disagreement regarding Plaintiff's responses to RFPs, the parties dispute the adequacy of Plaintiff's responses to certain interrogatories that have been propounded. The Court is vested with discretion to determine what constitutes a satisfactory response to an interrogatory. <u>W. Elec. Co. v. Stem</u>, 544 F.2d 1196, 199 (3d Cir. 1976). With this discretion in mind, we will address each interrogatory, and Plaintiff's challenged response, separately below.

1.    Interrogatory No. 2

This interrogatory seeks the factual basis of any admissions or declarations against interest that Plaintiff contends were made by Defendants VRI or Bruce Wallace. In response, Plaintiff referred Defendants to responses to another interrogatory, to pleadings, deposition transcripts, and documents produced in response to RFPs. Defendants contend that such a response was incomplete and non-substantive.

In some instances, courts within the Third Circuit have held that referring a party to deposition transcripts and pleadings in response to an interrogatory is not proper. See, e.g., Collier v. Ecolab, Inc., No. 95-7486, 1996 U.S. Dist. LEXIS 4554, 1996 WL 171536, at *1 (E.D. Pa. Apr. 10, 1996) ("Answers to interrogatories should be complete and should not refer to other documents such as pleadings or depositions"); DiPietro v. Jefferson Bank, 144 F.R.D. 279, 282 (E.D. Pa. 1992) ("reference to sworn deposition testimony is an insufficient response to an interrogatory"). There may also be instances where reference to deposition testimony may provide an adequate response, provided that the responding party refers the discovering party to relevant pages of a deposition or other document that provides a responsive answer. See, e.g., Chiaradonna v. Rosemont College, No. 06-1015, 2007 U.S. Dist. LEXIS 21202, at *4 (E.D. Pa. Mar. 23, 2007) (concluding that answering

interrogatory with citation to deposition testimony was appropriate where much of the information sought was discussed at the deposition, but directing the responding party to supplement responses to provide specific reference to relevant pages of deposition testimony).

In this case, we find that Plaintiff's response lacks particularity, and we agree as a general matter that mere reference to "pleadings" and "deposition transcripts" would fail to provide a party seeking discovery with any reasonable guidance as to the opposing party's answers. However, we also find in this particular case that the interrogatory at issue is especially broad and arguably vague, as we have difficulty perceiving exactly what Defendants would have Plaintiff answer regarding any "statement" or "admission" that VRI or Bruce Wallace made at any time regarding "the subject matter of this lawsuit." Given the apparent breadth of this request, it is hard to understand how Plaintiff could begin to answer this question, particularly given that Bruce Wallace was subject to a deposition during which he presumably made a great many "admissions" or "statements" about the "subject matter of this lawsuit." Thus, while we agree with Defendants that blanket reference to pleadings and other documents is generally disfavored as a response to a proper interrogatory, in this case we do not find that the interrogatory is sufficiently tailored to compel

Plaintiff to provide a more specific (and, presumably, very lengthy) response to what is clearly a very broad question.

Having found no basis to compel a further response, we note that discovery continues in this case for at least two more months, and Defendants remain free to seek this information from Plaintiff during this time through the use of a more specific form of inquiry. To the extent that Defendant is able to propound a more targeted interrogatory regarding admissions made by VRI or Bruce Wallace, it may do so.

2. Interrogatory No. 3

In this interrogatory, Defendants directed Plaintiff to "[i]dentify any statements or other written documents you have obtained from any person not a party to this litigation regarding your claims against VRI and Wallace." In response, Plaintiff answers that all documents that have been obtained by way of subpoenas issued in the case have been produced, and additional documents would be produced to the extent they are obtained. Defendants contend that the response is inadequate, and argue that "[t]his is relevant information, and Defendants are entitled to a clear, specific response that, at a minimum, identifies each document and the source or third party who provided such documents." (Doc. 90-2, at 16.)

We do not agree that Defendants are entitled to an order compelling further response to this interrogatory. As with Interrogatory No. 2, this request is not only broad, but it has essentially been answered by way of reference to the materials in question – materials that have been made available to Defendants. We cannot discern what more Defendants would have Plaintiff do, and Defendants do not explain this, other than to argue that "Plaintiff should be compelled to provide proper answers that either [sic] give a narrative response." (Doc. 99, at 18.) Upon consideration, this appears to be little more than a make-work request on the part of Defendants, since if they are attempting to discover written documents obtained from third parties, they not only have the information, they have the written materials themselves. We find no substantial basis to compel Plaintiff to undertake the time and expense to lay this out for Defendants in a "narrative response."

3. <u>Interrogatory Nos. 9-13, 17-19, and 21-24</u>

These interrogatories are contention interrogatories that direct Plaintiff to "[i]dentify all facts that support" various contentions made in the complaint. Plaintiff responded to these interrogatories generally by asserting that the relevant allegations in the complaint state facts rather than contentions, or generally referring to pleadings and deposition transcripts. Defendants argue that these responses are incomplete and evasive, and maintain that they should not be put to the trouble of reviewing hundreds

of pages of deposition transcripts in order to "try to guess at or formulate themselves what Plaintiff's contentions or theories of the case are." (Doc. 90-2, at 16-17.) In its brief opposing the motion, Plaintiff insists that Defendants' interrogatories are vague, points to certain of its responses as providing specific answers to the questions posed, and expresses confusion about what more Defendants would have the bank do in order to answer the interrogatories to Defendants' satisfaction. (Doc. 96, at 10.)

Federal Rule of Civil Procedure 26(b)(1) authorizes parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Generally, a party may serve on another part as many as twenty-five written interrogatories, and leave may be granted to serve additional interrogatories. Fed. R. Civ. P. 33(a)(1). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time. Fed. R. Civ. P. 33(a)(2).

Interrogatories that "ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts" often are referred to as "contention interrogatories." In re Grand Casinos, Inc., Sec. Litig., 181 F.R.D. 615,

618 (D. Minn. 1998) (quoting McCarthy v. Paine Webber Grp., Inc., 168 F.R.D. 448, 450 (D. Conn. 1996)). "They are distinct from interrogatories that request identification of witnesses or documents that bear on the allegations." Id. Contention interrogatories differ in important ways from ordinary interrogatories: The term "contention interrogatories" refers to several types of questions. United States ex rel. Hunt v. Merck- Medco Managed Care, LLC, 2005 U.S. Dist. LEXIS 17014, at *7-8 (E.D. Pa. Aug. 15, 2005). They may ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts. Id. They are distinct from interrogatories that request identification of witnesses or documents that bear on the allegations. Id.; McCarthy v. Paine Webber Group, Inc., 168 F.R.D. 448, 450 (D. Conn. 1996) (citing In re Convergent Technologies Sec. Litigation, 108 F.R.D. 328, 332-333 (N.D. Ca. 1985)); see also B. Braun Med. v. Abbott Lab., 155 F.R.D. 525, 527 (E.D. Pa. 1994)(defining contention discovery as, inter alia, that which asks a party to "state all the facts upon which it bases a contention"); Leotta v. Firestone Tire & Rubber, 1989 U.S. Dist. LEXIS 5316, 1989 WL 51797, at *2-3 (E.D. Pa. May 12, 1989) (explaining that "contention interrogatories" embrace questions asking whether a party makes some specified

contention, or asking a party to state all the facts or evidence on which it bases some specified contention).

In an earlier case, the United States District Court for the Eastern District of Pennsylvania confronted a similar motion to compel further responses to contention interrogatories that were propounded early during the discovery process, in a case where the discovery process remained ongoing, and where the propounding party had control over or sufficient access to the evidence regarding their alleged misconduct. In that case, <u>Fischer & Porter Co. v. Tolson</u>, 143 F.R.D. 93 (E.D. Pa. 1992), the Court observed that in a case where the complaint was "not facially infirm," and where the defendants "appear[ed] to have control over or adequate access to much of the evidence of their alleged misconduct, the evaluation of their proffered justification [for serving contention interrogatories] demands special vigilance." <u>Id.</u> at 96. The court noted that "[a] party filing contention interrogatories early in the pretrial period, before substantial documentary or testimonial discovery has been completed, has the burden of justification." <u>Id.</u> To meet this burden, the court found that the party propounding contention interrogatories "must present 'specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure." <u>Id.</u> (quoting <u>In re Convergent Technologies Sec. Litig.</u>, 108 F.R.D. 328, 340-41 (N.D. Cal. 1985)). In

this regard, the court noted that the moving party must demonstrate "'that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussion, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." Id. (quoting In re Convergent Technologies Sec. Litig., 108 F.R.D. at 339. Relying upon this guidance, the court in Fischer & Porter Co. found that the moving party had failed to justify its use of contention interrogatories, and accordingly denied the propounding party's motion to compel, except to the extent that the interrogatories sought the identity of witnesses or of documents or other tangible evidence. Id.

In this case, Defendants have not justified the use of their various contention interrogatories, but instead rely on their general complaints that Plaintiff's answers are vague or not sufficiently specific, or run afoul of the requirements of the Federal Rules of Civil Procedure. For its part, Plaintiff defends the answers it provided, and contends that it lacks sufficient guidance on how its answers were insufficient. Upon consideration, we agree with Plaintiff.

In many instances, Plaintiff did, in fact, provide specific responses – albeit, not lengthy ones – followed by a general referral to other documents or deposition transcripts. For example, Interrogatory No. 13 seeks the factual basis for Plaintiff's

contention that Defendants have "refused" to provide the bank with documents concerning the status of equipment purchases, or an accounting or inspection of such purchases. Plaintiff's responded to this interrogatory by answering, plainly, that neither Bruce Wallace nor VRI has provided these documents, or permitted an accounting or inspection. (Doc. 90-3, Answer to Interrogatory No. 13.) It is difficult to understand how a party could be compelled to provide more specificity regarding this question, other than to note that neither VRI nor Wallace has ever complied with this request. Plaintiff bolstered its response by referring Defendants to motions to compel that were filed in this case, and to "all discovery responses made by all defendants," as well as to deposition transcripts. While we agree that such a general referral to these documents would, by itself, provide little guidance to Defendants, Defendants have not explained how a representation that Wallace and VRI have never provided certain documents, or authorized accountings or inspections, is somehow an inadequate answer.

In Interrogatory No. 17, Defendants directed Plaintiff to "[i]dentify all facts" that support Plaintiff's contention that Bruce Wallace "falsely represented" that immediate payment of the "invoice was imperative and advantageous to all parties in order to obtain substantial year-end price discounts on Equipment purchases," as

alleged in paragraph 30 of the complaint.  (Doc. 90-3, Interrogatory No. 17.)  Plaintiff

answered as followed

> VRI's answers to interrogatories nos. 1 and 2.  In June or
> July of 2009, Mr. Wallace reported to Mr. Caler of
> Susquehanna Bank that no equipment had been purchased.
> Defendant Wallace made numerous representations
> concerning the need to fund the equipment before year end
> 2008 for year end discounts.   See aforementioned
> depositions transcripts for numerous specifics.

(Doc. 90-3, Answer to Interrogator No. 17.)  Defendants never explain with any

particularity what about this answer is inadequate, other than to complain that

Plaintiff's response to this and other contention interrogatories "identified few (if

any) specific facts . . . ."  (Doc. 90-2, at 19.)  Similarly, Defendants contend that

Plaintiff's response to Interrogatory No. 18 was inadequate.  That interrogatory

requested Plaintiff to identify all facts supporting the contention that Bruce Wallace

misrepresented the terms of VRI's agreement with Brookeside by failing to disclose

the existence and terms of a supply agreement, as alleged in the complaint.  In

response, Plaintiff answered:

> According to the documents produced by Defendant VRI,
> the Supply Agreement was first presented to Dr. Mark
> Smith by e-mail on December 22, 2008.  Plaintiff has no
> record of receiving a copy of the Supply Agreement nor
> any notice of its existence until at least September 2009.
> Further, there are two version of the alleged agreement.
> Furthermore, Dr. Smith denies the authenticity of his

> signature on one of the agreements. Plaintiff never
> consented to have the $3 million used for any purpose
> other than to fund specific equipment.

(Doc. 90-3, Answer to Interrogatory No. 18.) Defendant offers no explanation as to why this answer is insufficient, but instead seems to assume that the defects in the answer are self-evident. We do not find that this concededly brief answer is so glaringly deficient as to require a court order compelling further response. In other instances, Plaintiff's answers are similar, and Defendants have not explained how it would have Plaintiff answer each of these contention interrogatories, all of which appear to seek answers to questions that would appear to have been the subject of other discovery taken, or to be taken, in this case, including the use of depositions.

Accordingly, upon consideration, we will deny Defendants' motion to compel further responses to these contention interrogatories, but we will do so without prejudice to Defendants' right to renew its motion if it believes it can articulate more substantially its argument that Plaintiff's responses are improper, or that the answers provided were not sufficiently responsive. Discovery in this case remains ongoing for a considerable period of time, and it is anticipated that Defendants will have had substantial opportunity to question Plaintiff and its representatives about the factual bases for its contentions in this litigation, and about related matters. If Defendants continue to believe that they require additional or more fulsome answers to contention

interrogatories after additional discovery has been completed, they may renew their motion at that time, and will be expected to argue with specificity any perceived deficiencies that remain in Plaintiff's answers.

### D. ESI

Lastly, Defendants ask the Court to compel Plaintiff to preserve, collect, and produce ESI and to engage in an e-discovery process in the same way as traditional discovery. Specifically, Defendants seek to compel Plaintiff to respond meaningfully to RFP No. 5, which requests:

> All electronically stored information, in its native electronic format, that you have created and/or modified and that relates to your claims against VRI and/or Wallace, including but not limited to e-mails, text messages, voice mail messages, web pages, work processing files, and databases stored in the memory of computers, magnetic disks (such as computer hard drives and floppy disks), optical disks (such as DVDs and CDs), and flash memory (such as "thumb" or "flash" drives).

(Doc. 90-3, RFP No. 5.) In addition, Defendants seek to compel answers to Interrogatory Nos. 6, 7, and 8, which request that Plaintiff identify information relating to the forms and sources of available ESI pertinent to this action. (Doc. 90-3, Interrogatory Nos. 6, 7, and 8.)

Defendants note that the Federal Rules of Civil Procedure recognize ESI as a separate category of records and information. In this regard, Defendants cite to Rule 26, which requires a party to disclose, without awaiting a discovery request, "a copy

of , or a description by category and location of, all documents, ***electronically stored***

***information***, and tangible things that are in the possession, custody, or control of the

party." Fed. R. Civ. P. 26(a)(1)(B) (emphasis added). Aside from what the Rules

authorize or require, Defendants argue that this case presents a textbook example of

why e-discovery should be deemed relevant or even critical, namely, questions about

Plaintiff's diligence in preserving, collecting, and producing documents in response

to Defendants' RFPs.

Plaintiff argues that it should not be compelled to make available ESI in this

case because Defendants' prior counsel entered into a written agreement with

Plaintiff's counsel that the parties would produce responsive documents on a disc or

in hard copy. Additionally, Plaintiff notes that it began its efforts to respond to

discovery many months ago, in reliance upon this agreement, and it would be unjust

to require that bank to undertake this new effort at this stage of the litigation.

Ironically, it is "well-established that communication among counsel is crucial

to a successful electronic discovery process . . . ." <u>Romero v. Allstate Ins. Co.</u>, No.

01-3894, 2010 U.S. Dist. LEXIS 111985, at *39 (E.D. Pa. Oct. 21, 2010). Perhaps

due in part to the fact that this litigation has seen the entrance and exit of several

lawyers who have served as counsel to VRI and Bruce Wallace (and now to

additional Defendants as well), communication about the electronic discovery and the

form of production that is so crucial to this process appears to have been compromised, and now necessitates court intervention.

Under Federal Rule of Civil Procedure 34, a party is permitted to specify the form of production of documents as including metadata, and the responding party must either produce it in the form specified, or otherwise object. Romero, 2010 U.S. Dist. LEXIS 111985, at *28-29 (citing Aguilar).  In order to resolve disputes that arise regarding the production of metadata or ESI, courts have generally referred to the Sedona Principles and Sedona Commentaries,[7] which are recognized as "the leading authorities on electronic document retrieval and production." Ford Motor Co. v. Edgewood Props., Inc., 257 F.R.D. 418, 424 (D.N.J. 2009) (citing William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co., 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("This Court strongly endorses The Sedona Conference Cooperation Proclamation"); John B. v. Goetz, 531 F.3d 448 (6th Cir. 2008) (following The Sedona Principles); Aguilar, 255 F.R.D. at 355-56 (same).

In accordance with these principles, courts have generally found that the burden rests with the party objecting to the production of metadata or ESI to show

---

[7] "The Sedona Conference . . . a nonprofit legal policy research and education organization, has a working group comprised of judges, attorneys, and electronic discovery experts dedicated to resolving electronic document production issues.  Since 2003, the Conference has published a number of documents concerning ESI, including the Sedona Principles.  Courts have found the Sedona Principles instructive with respect to electronic discovery issues." Aguilar, 255 F.R.D. at 355-56.

undue hardship or expense. See, e.g., Romero, 2010 U.S. Dist. LEXIS 111985, at

*32; Camesi v. Univ. of Pittsburgh Med. Ctr., No. CIV A.09-85J, 2010 U.S. Dist.

LEXIS 50769, 2010 WL 2104639, at *7 (W.D. Pa. May 24, 2010) ("Although a clear

showing of undue hardship and/or expense may excuse Defendants' production in

native format, the fact that such a production may be more useful or cause less

expense to Plaintiffs obviously will not."); In re Netbank, Inc. Secs. Litig, 259 F.R.D.

656, 681-82 (N.D. Ga. 2009); In re Payment Card Interchange Fee & Merchant

Discount, No. MD.05-1720, 2007 U.S. Dist. LEXIS 2650, 2007 WL 121426, at *4

(E.D.N.Y. Jan. 12, 2007) (granting motion to compel).

Plaintiff's counsel's insistence that an agreement that he reached with prior

defense counsel about the manner of production, and that this "agreement should

govern [Defendants' ability to discover ESI] should govern without further analysis"

is unpersuasive. (Doc. 96, at 13.) Plaintiff correctly notes that Principle 12 of the

Sedona Principles, which provide accepted guidelines concerning e-discovery, states

that "absent party agreement or court order specifying the form or forms of

production, production should be made in the form or forms in which the information

is ordinarily maintained or in a reasonably usable form." Aguilar v. Immigration &

Customs Enforcement Div. of U.S. Dep't of Homeland Sec., 255 F.R.D. 350, 356

(S.D.N.Y. 2008). Plaintiff urges the Court to interpret this language to mean that

where the parties have reached a preliminary agreement regarding the form of production, this agreement should govern all production issues, regardless of whether circumstances may have changed. Plaintiff does not adequately acknowledge or account for the critical fact that significant questions have arisen in this case regarding the quality and scope of the production made to date in accordance with this agreement with former counsel, and Plaintiff disregards entirely the fact that several Defendants in this case were not even parties when this agreement with prior counsel was struck. Indeed, the email upon which Plaintiff relies in its efforts to rebuff Defendants' request simply confirms counsels' understanding that "***[a]t present*** there is no anticipated issue regarding deleted information or whether back-up or archived data will be an issue . . . ." (Doc. 96-3, Decl. of Sean Summers, Ex. A) (emphasis added.) In this case, we have identified above a number of questions that have arisen regarding both the scope of production and, potentially, the adequacy of Plaintiff's prior efforts to locate and identify responsive documents. We thus find that Plaintiff's reliance upon an earlier agreement with prior defense counsel cannot absolutely control Defendants' ability to discover ESI in this case, under any circumstance.

Additionally, Plaintiff does not even argue, much less argue persuasively, that responding to RFP No. 5 and Interrogatory Nos. 6, 7, and 8 will be unduly

burdensome or prohibitively expensive. Indeed, aside from arguing that an agreement with prior counsel should provide ironclad guidance with respect to all e-discovery production issues arising in this case, Plaintiff simply asserts that Defendants delayed unreasonably in bringing this motion and making demands for ESI. Here, too, we must disagree with Plaintiff. It appears that Defendants contacted Plaintiff about the need for e-discovery in July, 2010 – the month that Plaintiff completed its final installment of document production – after which the parties unsuccessfully attempted to resolve the issue. Thereafter, Defendants advised the Court about the dispute, and the Court authorized the instant motion. The motion was not fully briefed until the end of October, 2010, due, in part, to an extension sought by Plaintiff's counsel. On the record before the Court, we cannot conclude that Defendants delayed unreasonably in seeking a judicial order to enforce their request for ESI from Plaintiff.

Accordingly, given the halting nature of this action since it commenced, the questions that have come up regarding the sufficiency of Plaintiff's production and efforts to identify responsive documents, and the absence of any showing that responding the Defendants' request for ESI would be unduly burdensome or otherwise inordinately difficult, we will grant Defendants' motion to compel Plaintiff to respond to RFP 5, and to Interrogatory Nos. 6, 7, and 8. In addition, we will direct

that the parties confer in an effort to work out a mutually agreeable production schedule with respect to these e-discovery requests.

## IV. **ORDER**

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED THAT Defendants' motion to compel (Doc. 90) is GRANTED in part and DENIED in part as follows:

1. Plaintiff is directed to undertake further efforts to locate, identify, and produce additional responses to RFP Nos. 10, 19-24, 13-17, 28, 29, 33-36, 39 44, 53 and 60. In the event that Plaintiff is unable to locate additional material in response to these RFPs by December 31, 2010, Plaintiff and its counsel shall submit a sworn declaration explaining the efforts that were undertaken in an effort to comply with this order.

2. Defendants' motion is DENIED with respect to the request that Plaintiff be directed to supplement its response to RFP Nos. 31 and 45-48.

3. Defendants' motion is DENIED without prejudice with respect to its request that Plaintiff be compelled to provide further answers to interrogatories that have been propounded.

4. Defendants' motion is GRANTED with respect to its request that Plaintiff be compelled to provide answers to RFP No. 5 and Interrogatory Nos. 6-8 regarding ESI. Plaintiff shall amend its answers to these discovery requests not later than December 31, 2010. Plaintiff and Defendants are directed to confer in an effort to work out a mutually agreeable production schedule with respect to these e-discovery requests.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

Dated: December 1, 2010